IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| HEATHER BAILEY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) Case No. 4:14-cv-01631 RLW |
| v. | ) |
| | ) |
| GOLDEN STATE FOOD CORP. et al., | ) |
| | ) |
| | ) |
| Defendants. | ) |

## PLAINTIFF'S TRIAL BRIEF

COMES NOW, Plaintiff, by and through counsel, and submits the following Trial Brief pursuant to the Court's trial order:

## SUMMARY OF PLAINTIFF'S CLAIMS

This case arises out of a motor vehicle collision involving Heather Bailey and David Lax, a truck driver for Golden State Foods . On the morning of May 7, 2013, Heather and her young son were traveling southbound on Highway 67 in order to surprise her grandmother for a late Mother's Day.  The conditions that morning were foggy, misty, dark and wet.  Heather, believing she had missed her Grandmother's exit, slowed and began turning into the u-turn crossover when Mr. Lax, suddenly and without warning, veered left and smashed into her car from behind.  Despite the adverse weather conditions and in direct violation of Federal Motor Carrier Safety Regulations and commercial driver manual requirements, Mr. Lax was operating the loaded tractor trailer at 65 mph with the cruise control on.  In addition, by Mr. Lax's own account, he saw Heather driving slowly a half mile ahead of him but did not disengage his cruise, tap his brakes or slow in any way.  Mr. Lax's event recorder indicates that he didn't apply his

1

brakes until 1 second before impact and the physical evidence indicates he turned into Heather while she was turning into the u-turn crossover.

Golden State Foods (hereinafter "GSF") acquired Mr. Lax as a driver when GSF took over his prior employer less than 6 weeks before this collision. Despite their own internal requirements, they did not train, test or educate Mr. Lax on simple rules of the road including the use of the cruise control and slowing speed in adverse weather conditions. Nor did GSF do a thorough background check on him. GSF's negligence in hiring, vetting, testing, failing to train, and putting Mr. Lax on the road makes them directly responsible for Heather's injuries.

This collision caused catastrophic injuries to Heather. As a direct result of the collision Heather was knocked unconscious suffering a traumatic brain injury, multiple skull fractures and a brain bleed. The weather conditions that morning were so adverse that a helicopter could not safely land in the area so she was driven by ambulance to the local hospital and eventually air lifted from that hospital to St. Louis. She was placed in intensive care for several weeks. Doctors had to pull back her face to repair the damage to her skull and her left leg continues to be drained of fluid to this day due to a shearing injury. As a direct result of this incident, Heather has suffered disabling cognitive injuries including loss of memory, executive function, emotional instability, seizures, headaches and neck pain. Her treating doctors will testify that it is likely she will develop a permanent seizure disorder as a result of her brain injury.

Prior to this collision Heather was in college and raising her young son. She is terrified to drive and is totally and completely disabled. She relies on help from her family to get by on a day to day basis.

Heather has incurred medical bills of approximately $450,000.00.

## SUMMARY OF ANTICIPATED EVIDENTIARY ISSUES

From a legal perspective, this is a relatively straight forward case. Plaintiff has filed a direct claim against Golden State Foods for their negligence in hiring, training. retaining and vetting Mr. Lax. Plaintiff has also alleged vicarious liability through the direct negligence of Mr. Lax and is seeking a punitive count against both defendants. Plaintiff anticipates that Defendant will argue that Heather was completely at fault for this collision by turning in front of Mr. Lax. They will also likely dispute the weather conditions that morning and the extent and severity of Heather's injuries. They may also dispute the application of the Federal Motor Carrier Safety regulations and the commercial driver's manual. Plaintiff has outlined the remainder of the evidentiary issues in her Motions in Limine filed contemporaneously with this Trial Brief.

## REGARDING VOIR DIRE

The right to an unbiased jury is fundamental to the judicial process. As the Missouri Supreme Court stated in *Kendall v. Prudential Ins. Co. v. America*, 327 S.W.2d 174 (Mo. banc 1959): "It is fundamental that jurors should be thoroughly impartial . . . . The right to unbiased and unprejudiced jurors is an inseparable and inalienable part of the right to a trial by jury guaranteed by the Constitution." *Id.* at 177.

R.S.Mo. § 494.470 provides the basic framework for the trial court's role in voir dire, requiring that a venireperson **must** be stricken for cause if: (1) the person "has formed or expressed an opinion concerning the matter or any material fact in controversy in any case" or (2) the person's "opinions or beliefs preclude them from following the law as declared by the court in its instructions . . . ." (Emphasis added.) The case law adds flesh to this framework, clearly establishing that the trial court may exclude prospective jurors for any potential bias,

3

even though the circumstances may not come specifically within the reasons for exclusion set out in § 494.470. See, e.g., *Johnson v. Missouri-Kansas-Texas R.R Co.*, 374 S.W.2d 1 (Mo. App. 1963) (the disqualifying factors enumerated in the statute are not exclusive grounds upon which a trial court may properly sustain a challenge for cause); *State v. Huffer*, 424 S.w.2d 776 (Mo. App. 1968) (trial court's discretionary authority to grant challenges for cause may be based on grounds beyond those specifically set forth in statute). The trial court also is afforded substantial discretion in excusing prospective jurors because of hardship. See, e.g., *State v. McMillin*, 783 S.W.2d 82 (Mo. banc 1990) (mothers with young children properly excused).

The case law also (1) advocates allowing wide latitude to counsel in the voir dire process, (2) helps define the process by which the trial court should exercise its discretion in this process, and (3) addresses the propriety of many specific areas of inquiry.

A careful review of this body of law yields the following principles of voir dire:

**Principle #1: Counsel is entitled to wide latitude in questioning prospective jurors.**

- The objective of voir dire is to discover the state of mind of prospective jurors and to determine by examination which veniremen harbor bias or prejudice against either party which would render them unfit to serve as jurors. *State v. West*, 809 S.W.2d 464 (Mo. App. 1991).

- The right to a jury trial demands fair, unbiased and impartial jurors. To determine whether prospective jurors meet those requirements, counsel may question panelists about their qualifications, interest and prejudice. *O'Brien v. Vandalia Bus Lines*, 173 S.W.2d 76 (Mo. 1943).

- One purpose of voir dire examination is to ferret out any bias or prejudice on the part of potential jurors. *State v. Ball*, 622 S.W.2d 285 (Mo. App. 1981).

- Wide latitude is allowed in the examination of the panel because the purpose of voir dire is to enable each party to participate in the selection of a fair and impartial jury. *State v. Smith*, 649 S.W.2d 417 (Mo. banc 1983).

- It is the Missouri rule that "wide latitude is allowed in the examination of the jurors on voir dire." *State v. Finch*, 746 S.W.2d 607 (Mo. App. 1988). Litigants have the right, through the process of voir dire, to discover bias or prejudice on

4

    the part of prospective jurors, and they should be allowed wide latitude in the search for open-minded jurors. *Id.*

- "Great liberality is allowed in inquiring into attitudes and experiences of the jury panel." *State v. Coleman*, 553 S.W.2d 885 (Mo. App. 1977).

**Principle #2.** It is the trial judge, not the venireperson himself, who should make the determination about whether the venireperson is unbiased and qualified, or, alternatively, should be excused.

- A prospective juror is not the judge of his own qualifications; the trial court must carefully consider the responses of veniremen and make an independent evaluation of the prospective juror's qualifications. *State v. Coleman*, 725 S.W.2d 113 (Mo. App. 1987).

- In making the determination of whether the venireman is qualified, the trial court must analyze the facts detailed by the venireman and must not accept the venireman's own assessment that he could be unbiased. *State v. Kayser*, 637 S.W.2d 836 (Mo. App. 1982).

**Principle #3:** The trial judge should sustain challenges for cause if there is any doubt about a venireman's impartiality, even when the number of prospective jurors is running low.

- "If the answers of prospective jurors to questions posed by counsel or the court raise a doubt as to their ability to be fair, such doubt is to be resolved by removing them from the jury panel." *State v. Hamlett*, 756 S.W2d 197 (Mo. App. 1988).

- When a venireman gives equivocal responses to questions about whether he can follow the court's instructions, such equivocation requires that the venireman be stricken when challenged for cause. *State v. Lang*, 795 S.w.2d 598 (Mo. App. 1990).

- When a venireman stated during voir dire examination that he would demand more evidence than most people to convince him and that the lack of physical evidence would be a problem for him, the trial court properly struck that potential juror for cause. *State v. Turner*, 810 S.w.2d 92 (Mo. App. 1991).

- When a prospective juror on voir dire has expressed doubts about his ability to set aside his bias and decide the case on the law and the evidence without a redisposition against one of the parties, he is subject to removal for cause. *State v. Houston*, 803 S.W.2d 195 (Mo. App. 1991).

5

- Thus, when a venireman gave equivocal responses about whether she could be fair and impartial, the trial court erred in refusing to strike her for cause. The trial court erroneously failed to heed the Missouri Supreme Court's admonition to trial judges "to be extra prudent and err on the side of caution in determining whether a prospective juror should be stricken for cause." *State v. Coleman*, 725 S. W.2d 113 (Mo. App. 1987).

Indeed, the Missouri Supreme Court has made this "principle # 3" clear, holding that trial judges should freely excuse jurors for cause when there are plausible challenges. *State v. Wacaser*, 794 S.W.2d 190 (Mo. banc 1990). See also *State v. Hopkins*, 687 S.W.2d 188 (Mo. banc 1985) (errors in the exclusion of potential jurors should always be made on the side of caution). Moreover, it is no answer to say that the number of prospective jurors is running low; an unqualified venireman must be excused upon a challenge for cause, regardless of the effect upon the size of the venire panel. *State v. Zweifel*, 570 S.W.2d 792 (Mo. App. 1978).

**Principle #4**: <u>A venireman whose answers to voir dire questions demonstrate bias cannot be rehabilitated by simply stating that he can be fair and follow the trial court's instructions.</u>

- In *State v. Roberts*, 604 S.w.2d 765 (Mo. App. 1980), three veniremen gave voir dire answers demonstrating that they could not be impartial. Later, those veniremen remained silent when the entire venire was asked whether anyone would be unable to follow the court's instructions. The trial court denied the defendant's request to strike those veniremen for cause, concluded that they were rehabilitated by the general questioning. The appellate court reversed: "We believe it apparent that these jurors had admitted prejudice which they frankly revealed and which effectively disqualified them. The subsequent general questions to the entire venire as to whether they would follow the instructions of the court, to which no juror responded, did not serve to rehabilitate the challenged veniremen."

- Similarly, in *State v. Byrd*, 646 S.W. 2d 419 (Mo. App. 1983), several veniremen gave voir dire answers indicating that they would draw an adverse inference if the defendant did not testify. The trial court denied the defendant's request to strike those veniremen for cause since the court had received no response to its own, subsequent question asking whether any veniremen would be unable to follow the court's instructions to the effect that they should not draw an adverse inference if the defendant chose not to testify. The trial court erred in denying the defendant's

6

challenges for cause. "Here, although the entire panel remained silent upon the advice of the court as to no presumption of guilt could be made by appellant's failure to testify, and that the burden of proof was on the state (and none raised their hands in response to the advice), none were questioned individually as to whether they recanted from their previous statements as to how they would regard appellant's failure to testify or present evidence in his own behalf. The trial court should have sustained the instant challenges for cause."

- *State v. Edwards*, 740 S.W.2d 237 (Mo. App. 1987), states the principles applicable to attempted rehabilitation: (a) unequivocal statements of bias or prejudice require the trial court to strike a venireman for cause; that person cannot be rehabilitated (b) a venireman who gives equivocal answers demonstrating partiality may be rehabilitated if the rehabilitation is responsive to the indications of partiality and if the venireman then gives clear, unequivocal assurance that he will not be partial; and © when any question of partiality is raised and not directly refuted by attempted rehabilitation, it is an abuse of discretion for a trial court not to sustain a challenge for cause.

**Principle #5**: The refusal to grant a legitimate challenge for cause is a serious trial error.

- It is reversible error for a trial court to deny a legitimate challenge for cause to excuse a veniremen who is partial or prejudiced. *Catlett v. Illinois Central Gulf RR. Co.*, 793 S.W.2d 351 (Mo. banc 1990).

- Where the answers of a prospective juror during voir dire are equivocal and disclose uncertainty about his ability to be impartial, the failure of the trial judge to sustain a challenge for cause is reversible error. *State v. King*, 746 S.W.2d 120 (Mo. App. 1988).

In addition to establishing these principles, the case law, collectively, demonstrates a wide variety of specific voir dire subjects and questions that have been approved. Some illustrative "approved inquires" are set out here:

- It is proper to ask veniremen about any preconceived prejudices or personal feelings which would prevent a panelist from following the court's instructions. *State v. Henderson*, 750 S.W.2d 555 (Mo. App. 1988); *Littell v. Bi-State Transit Development Agency*, 423 S.W.2d 34 (Mo. App. 1967).

- A plaintiff seeking to recover for personal injuries has a right to inquire about the sum of damages he will seek; he may ascertain from the panel whether, by reason of the amount plaintiff seeks to recover, any of the veniremen are biased or prejudiced and would be unable to render a fair and impartial verdict based on the evidence and the court's instructions. *Wright v. Chicago, Burlington & Quincy*

7

> *R.R. Co.*, 392 S.W. 2d 401 (Mo. 1965); see also *Littell v. Bi-State Development Agency*, 423 S.w.2d 34 (Mo. App. 1967).

- It is proper to explain legal concepts to the veniremen during voir dire in order to determine whether any of them have any personal qualms about following the law. See *State v. Henderson*, 750 S.W.2d 555 (Mo. App. 1988) (trial court properly permitted prosecutor to explain facts of case and then explain the concept of accomplice liability to determine whether the panelists had any personal qualms about holding one person responsible for the crimes of another; that procedure properly tested whether panelists' personal feelings would prevent them from following the court's instructions on accomplice liability).

- A party may inquire about prospective jurors' attitudes toward corporations; a person who is prejudiced in favor of corporations and against an individual litigant should be excused for cause. *Vessels v. Kansas City Light and Power Co.*, 219 S.W 80 (Mo. Banc 1920); *Johnson v. Kansas City Electric Light Co.*, 232 S.W. 1094 (Mo. App. 1921).

- Voir dire may include inquiry about a venireman's partiality toward a particular category of testimony (e.g., the person is more likely to believe a policeman, etc.). *State v. West*, 809 S.W.2d 464 (Mo. App. 1991).

- A plaintiff may ask prospective jurors whether they or any members of their family have any financial interest in, or are employed by, the defendant's liability insurance carrier. *Carothers v. Montgomery Ward and Co.*, 745 S.W.2d 170 (Mo. App. 1987).

It is proper to ask veniremen whether there is any moral, religious, philosophical or other reason why that person cannot sit in judgment of another person; that inquiry is relevant to whether the venireman can follow the court's instructions and whether the venireman has any preconceptions or predispositions that would prevent open-minded consideration of the case. *State v. Luster*, 750 S.W.2d 474 (Mo. App. 1988).

Plaintiff requests the right to modify or supplement her Trial Brief in the interests of justice and if additional facts or defenses are raised.

Respectfully Submitted,

PAGE LAW, LLC.

/s/ J. Brad Wilmoth

---

John J. Page, #53239MO
Andrew T. Drazen, #59879MO
J. Brad Wilmoth #56922MO
12166 Old Big Bend Road, Suite 100
Kirkwood, MO 63122
T:  314-835-5800
F:  314-835-5853
John@pagelaw.com
Andy@pagelaw.com
Brad@pagelaw.com
*Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

The undersigned certified that on this 26th of August, 2016 copies of the foregoing were served on the following counsel of record via the court's ECF filing system:

Lee Baty
Baty, Hold, Numrich & Otto, PC
4600 Madison Ave., Ste 210
Kansas City, MO 64112
lbaty@batyholm.com

/s/ J. Brad Wilmoth

---

J. Brad Wilmoth